13. **No Conflicting Obligations.** Employee represents and warrants to the Company that, as of the date this Agreement is executed and as of the Effective Date, he is not under any obligation of a contractual or other nature to any person or entity which is inconsistent or in conflict with this Agreement, or which would prevent, limit or impair in any way the performance by him of his obligations hereunder.

14. **Governing Law and Forum Selection.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any action in law or equity regarding this Agreement or the Company's or Employee's rights hereunder may only be brought by either party hereto in the appropriate court in Westchester County, New York; the parties hereby waive any objection to personal jurisdiction in any proceeding before such court. The provisions of this Agreement do not in any way limit or abridge any rights of the Company or any of its subsidiaries or other affiliates under the law of unfair competition, trade secret, copyright, patent, trademark or any other applicable law(s), all of which are in addition to and cumulative of the Company's rights under this Agreement.

15. **Severability.** Each of the provisions of this Agreement shall be deemed separate and severable each from the other. In the event that any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason by final judgment of a court of competent jurisdiction, the remaining provisions or portions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law.

16. **No Set Off.** The existence of any claim, demand, action or cause of action of Employee against the Company, whether or not based upon this Agreement, will not constitute a defense to the enforcement by the Company of any covenant or agreement of Employee contained herein.

17. **No Attachment.** Except as required by law, no right to receive payments under this Agreement shall be subject to anticipation, commutation, alienation, sale, assignment, encumbrance, charge, pledge or hypothecation, or to execution, attachment, levy or similar process or assignment by operation of law, and any attempt, voluntary or involuntary, to effect any such action shall be null, void and of no effect; provided, however, that this provision shall not prevent Employee from designating one or more beneficiaries to receive any amount after his death and shall not preclude his executor or administrator from assigning any right hereunder to the person or persons entitled thereto, and in the event of Employee's death or a judicial determination of Employee's incompetence, Employee's rights under this Agreement shall survive and shall inure to the benefit of Employee's heirs, beneficiaries and legal representatives.

18. **Source of Payments.** All payments provided under this Agreement shall be paid in cash from the general funds of the Company, and no special or separate fund shall be established and no other segregation of assets shall be made to assure payment.

19. **Tax Withholding.** The Company may withhold from any benefits payable under this Agreement all federal, state, city or other taxes as shall be required pursuant to any law or governmental regulation or ruling.

20. **Notices**. Any notice or communication between the Company and Employee with respect to this Agreement or events covered thereby shall be performed or confirmed in writing and be deemed given when delivered in person, or dispatched by registered or certified mail, return receipt requested, postage prepaid or by any overnight delivery service, as follows:

(i)     If to the Company:     Creed Electrical Supply and
                                                           Equipment Corporation
                                                           2 John E. Walsh Blvd.
                                                           Peekskill, New York 10566

             with a copy to:          McKenna Long & Aldridge LLP
                                                           303 Peachtree Street, Suite 5300
                                                           Atlanta, Georgia 30308
                                                           Attention: David M. Ivey

(ii)     If to Employee:       Ron Padovani
                                                    25 Erie Avenue
                                                    Midland Park, New Jersey 07432

or at such other address as either party may have furnished to the other in accordance herewith, except that notices of change of address shall be effective only upon receipt.

21. **Amendment and Waiver**. No provision of this Agreement may be amended or modified, unless such amendment or modification is in writing and signed by the Company and by Employee. No waiver by either party hereto of any breach by the other party hereto of any condition or any provisions of this Agreement to be performed by such other party shall be deemed a waiver of a subsequent breach of such condition or provision or waiver of a similar or dissimilar condition or provision at the same time or any subsequent time.

22. **Successors and Assigns**. This Agreement shall inure to the benefit of the Company's successors in interest, including, without limitation, successors through merger, consolidation, or sale of substantially all of the Company's stock or assets, and shall be binding upon Employee.

23. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which will constitute an original but all of which together will constitute but a single document.

24. **Prior Agreements**. This Agreement supersedes all previous agreements between the Company and Employee concerning terms and conditions of the employment of Employee by the Company, and all such previous agreements are hereby deemed canceled, terminated, and of no further force or effect.

25. **Entire Agreement**. This Agreement, including all Schedules and Exhibits attached hereto, contains the entire agreement between the parties relating to Employee's

employment with the Company, and no statements, representations, promises or inducements made by any party hereto, or agreement of either party, which is not contained in this Agreement (or in a writing signed by both parties and expressly providing that it is supplemental to this Agreement) shall be valid or binding.

*(signatures appear on next page)*

ATLANTA:4481997.4

IN WITNESS WHEREOF, Employee has hereunder set his hand and seal, and the Company has caused this Agreement to be executed by its duly authorized officer as of the day and year first above written.

"EMPLOYEE":

By: _____[signature]_____
Ron Padovani


"COMPANY":

Creed Electrical Supply and Equipment Corporation

By:_____
Name:_____
Title:_____

-11-

**IN WITNESS WHEREOF,** Employee has hereunder set his hand and seal, and the Company has caused this Agreement to be executed by its duly authorized officer as of the day and year first above written.

"EMPLOYEE":

By:_____
    **Ron Padovani**


"COMPANY":

**Creed Electrical Supply and Equipment Corporation**

By: _/s/_____
Name: _STEVEN EMANUEL_____
Title: _Pres._____

-11-

ATLANTA:4481997.4

## Exhibit A

### Commission

(a) Each week (or, in the event the Company converts its standard payroll processing to another period, such period) (in either instance, the "Payroll Period"), the Company shall advance to Employee an amount that is determined in good faith by the Company (the "Advance"), and which is intended to approximate the Commission likely to be earned by Employee during such Payroll Period. The amount of Employee's Advance as of the Effective Date will be $ 1500.00 per week. The amount of future Advances may be decreased by the Company upon two weeks' written notice to Employee.

(b) Within fifteen (15) days after the end of each calendar month (beginning with the fourth month of the Term), the Company shall perform the following computation:

    (i) the Company shall first compute the Commission earned by Employee in respect of the immediately preceding four-month period (the "Measurement Period") calculated as set forth in paragraphs (c) and (d), below. Such amount is referred to as the "Period Commission."

    (ii) the Company shall then compute the amount of unreimbursed expenses of Employee for which Employee may properly be reimbursed, according to Section 8 of this Agreement. Such amount is referred to as the "Reimbursable Expenses."

    (iii) the Company shall then compare the sum of the Period Commission and the Reimbursable Expenses to the total amount of Advances that have been made to Employee to date which have not been repaid or reconciled against Commission actually earned by Employee (the "Outstanding Advances").

        (A) If the sum of the Period Commission and the Reimbursable Expenses exceeds the amount of the Outstanding Advances, the Company shall pay to Employee the excess.

        (B) If the sum of the Period Commission and the Reimbursable Expenses is less than the amount of the Outstanding Advances, Employee shall immediately remit the shortfall to the Company; provided, however, that during the first eight (8) months of the Term following the Effective Date, the Company shall waive the immediate payment of such shortfall to the Company if, in its reasonable judgment, there are sufficient uncollected receivables generated by Employee that are less than 120 days old and that, if collected, would support the payment of such Commission in future Periods; provided, further, that in such event, the amount of the shortfall will be counted as part of the Outstanding Advances for the next Measurement Period.

(c) Employee's Commission in respect of any Measurement Period shall be equal to twenty percent (20%) of the "Gross Profit" (as defined below) actually received by the Company

that is generated by those customers called upon by Employee in the performance of his duties hereunder (the "Customers"); provided, however, that the foregoing commission percentage may be adjusted as to specific Customers upon the mutual written agreement of Employee and the Company. The Commission will be computed based upon invoices that actually have been paid to the Company by Customers within one hundred twenty (120) days of the date of each such invoice; provided, however, that a paid invoice shall count only once toward the computation of any Commission, and provided, further, that any invoice that is not paid within one hundred twenty (120) days of its invoice date shall not be counted toward the calculation or payment of any Commission, even if subsequently paid. The Company will use its reasonable efforts to notify Employee of any unpaid invoices that are more than ninety (90) days old.

(d)     In the event this Agreement expires or is terminated, Employee shall be entitled to be paid Commission in respect of any Customer order that has been entered into the Company's system and identified as an order generated by Employee as of the Termination Date and which is paid within 120 days of the invoice date thereof; provided, however, such Commission shall be payable not later than 180 days after the Termination Date, and provided, further, that such payment shall be subject to set-off in the event that Employee has amounts due and owing to the Company (e.g., Advances that have been made in respect of Commissions that were not earned).

(e)     For purposes of this Agreement, and with respect to any given Customer, "Gross Profit" means the gross revenues to the Company directly attributable to those revenues received from such Customer less the expenses of the Company attributable to such Customer, all as reasonably determined by the Company.

## Exhibit B

### Benefits

- Basic medical plan -- Employee will be responsible for 25% of the premiums and expenses associated with the Company's basic medical plan, plus any increases in such expenses in the future. If such a plan is offered, Employee may select a medical plan that is more comprehensive than the basic plan, but shall bear any additional expense over and above those described by the preceding sentence.

- 401(k) plan

- Mobile phone (with a monthly charge limit of $ 100.00 )

- Business cards, promotional materials, catalogs, basic office supplies

## Schedule 5(b)

### Separation Payment

If payable, the Separation Payment shall be an amount equal to (a) Employee's average weekly Commission for the most recently ended Measurement Period from the Termination Date, multiplied by (b) four (4) (the "Separation Payment Sum"). If payable, the Separation Payment Sum shall be paid to Employee in one lump sum no later than fifteen (15) days after the Termination Date, but shall be subject to set-off in the event that Employee has amounts due and owing to the Company (e.g., Advances that have been made in respect of Commissions that were not earned).