## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

CREED ELECTRICAL SUPPLY &
EQUIPMENT CORP.,

              Plaintiff

v.

RON PADOVANI, U.S.ELECTRICAL
SERVICES, LLC and MONARCH
ELECTRIC CO.,
              Defendants.

-------------------------------------------------------

CIV. ACTION No. 07-CV-2854
(WP4) (MDF)


MEMORANDUM OF LAW


**LAW OFFICES OF GERRY E. FEINBERG**
11 Martine Avenue
WHITE PLAINS, NEW YORK 10606-1934
914—946-4343

Law Offices of Gerry E. Feinberg, P.C.
Gerry E. Feinberg. (GEF 4813)
11 Martine Avenue – 12th Floor
White Plains, New York 10606
TEL:  (914) 946-4343
FAX:  (914) 682-9188
Attorneys for Plaintiff
Creed Electrical Supply &
Equipment Corp.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

CREED ELECTRICAL SUPPLY &              CIV.  ACTION No. 07-CV-2854
EQUIPMENT CORP.,                       (WP4) (MDF)

       Plaintiff

v.

RON PADOVANI,  U.S.ELECTRICAL
SERVICES, LLC and MONARCH
ELECTRIC CO.,
       Defendants.

-------------------------------------------------------


### PLAINTIFF'S MEMORANDUM OF LAW


#### Preliminary Statement

      This memorandum of law is respectfully submitted on behalf of plaintiff, Creed

Electrical  Supply & Equipment Corp. ( the "Creed"), in support of its application

pursuant to  F.R.C.P. 65, for a temporary restraining order  and preliminary injunction

enjoining the defendants  from breaching or inducing the breach of the restrictive

covenants contained in the employment contract (the "Contract") between defendant Ron

Padovani ("Padovani") and Creed.

As more fully set forth in the accompanying affidavit of Creed's President, Steven

Emanuel submitted herewith, Padovani was employed by Creed in its sales division

commencing in or about December 2002 and continuing through early March, 2007. At

the time Padovani's employment ended he was governed by an employment contract (the

"Contract"), which contained a restrictive covenant preventing his contacting or soliciting

Creed clients or prospective clients who he had been in contact with for the two (2) year

period prior to the end of his employment.

As is further set forth in the accompanying submission, Creed has recently

learned that Padovani has breached the Contract by soliciting customers of Creed while

employed by defendant Monarch Electric Co., believed to be a wholly owned subsidiary

of defendant U.S Electrical Services, LLC.

Finally, the Contract specifically provides that injunctive relief is warranted under

the circumstances which have been presented here.


## ARGUMENT

### Plaintiff is Entitled to Injunctive Relief

The standard for issuing injunctive relief is and consists of a showing that there is:

"(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2)

sufficiently serious questions going to the merits to make them fair ground for litigation

and a balance of hardship tipping decidedly toward the party requesting the preliminary

relief. Jackson Dairy, Inc., v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2nd Cir.1979)

(per curiam). While courts in New York are generally reticent to issue injunctive relief

interfering with ones ability to earn a living, there are situations where the courts have

seen fit to grant injunctive relief enforcing restrictive covenants. The standard is

generally well known and was set forth in a Maltby v. Harlow Meyer Savage, Inc., 166

Misc. 2d 481, 633 N.Y.S. 2d 926 (Sup Ct. . N. Y.Co. 1995), aff'd 223 A.D. 2d 516, 637

N.Y.S. 2d 110 (1ˢᵗ Dep't 1996) as follows:

> Although the courts of New York. have adopted a strict approach in construing
> non-competition agreements and restrictive covenants, the courts have repeatedly
> enjoined employees from breaching such agreements when they are reasonable in
> scope, duration and geographical area. (Gelder Medical Group v. Weber, 41 N.Y.
> 2d 680; Reed, Roberts, Assocs. v. Strauman, 40 N.Y. 2d 303; Matter of
> Schachter, 52 A.D. 2d 121, aff'd 41 N.Y. 2d 1067). While powerful public policy
> considerations militate against enforcement of restrictive covenants (See,
> Columbia Ribbon & Carbon Manuf. Co. v. A-1-A Corp., 42 N.Y. 2d 496;
> Purchasing Assocs. v. Weitz, 13 N.Y. 2d 267, "[a]t the same time an employer is
> entitled to protection from unfair or illegal conduct that causes economic injury.
> The rules governing the enforcement of anti-competitive covenants and the
> availability of equitable relief after termination of employment are designed to
> foster these interests of the employer without impairing the employee's ability to
> earn a living or the general competitive mold of society). (American Broadcasting
> Co. v. Wolf, 52 N.Y. 2d 394, 404)." Acknowledging the tension between the
> freedom of individuals to contract, and the reluctance to see one barter away his
> freedom, the State enforces limited restraints on employee's employment mobility
> where a mutuality of obligation is bargained for by the parties (Post v. Merrill,
> Lynch, Pierce, Fenner & Smith 48 N.Y. 2d 84, 89). "Indeed, the modern trend in
> case law seems to be in favor of according such covenants full effect when they
> are not unduly burdensome …(Mohawk Maintenance Co. v. Kessler, 52 N.Y. 2d
> 276, 284 (citation omitted)".

It is respectfully submitted that the application of the above noted principles to the

facts of this case warrants the issuance of a temporary restraining order and  preliminary

injunction to prevent Padovani from violating the Contract.

In <u>Webcraft Technologies,Inc. v. McCaw,</u> 674 F. Supp.1039 (S.D.N.Y.1998), this Court granted a temporary restraining order and preliminary injunction pursuant to a restrictive covenant significantly more limiting than what applies here.

In <u>Webcraft</u>, the plaintiff sought enforcement of a restrictive a covenant which limited the defendant from rendering any services in competition with the plaintiff or "soliciting business from or service the accounts of any customer of Webcraft during the two year period preceding said termination date" <u>Id</u>.

Unlike the provision at issue here, in <u>Webcraft</u> the non-solicitation provision applied with respect to <u>any</u> customer of Webcraft , regardless of whether McCaw had any contact with the customer. Accordingly, the Court in <u>Webcraft</u> limited the injunction to any accounts McCaw "solicited, contacted or acquired information about' while she was employed.

In the present case the restriction does not require the Court to wield a "blue pencil" to pair down the restriction, because it is no more restrictive that what was ultimately approved by the Court in <u>Webcraft</u>.

As far as the harm to Creed and its likelihood of success, as set forth in the accompanying affidavits, Padovani has been privy to information which can be used readily by Creed's competitors to unfairly compete. The nature of Creed's business is such that information made known to Padovani would be extremely important for a competitor. Padovani had been acting as a sales representative and sales manager for Creed. In that capacity he was privy to Creed's proprietary business information, which would give him an extreme advantage in soliciting Creed's customers. For example, he knows the exact details of such matters as (i) Creed's gross billings to each customer, (ii)

4

what items Creed has recently sold to each customer at what price, (iii) what the profitability of each customer is, (iv) what construction projects that customer was or will be bidding on, (v) how much the customer was or is prepared to spend for each item on the bid list for the project, (vi) how much each of Creed's suppliers charges us for each item, and other highly proprietary and valuable information. This is exactly the type of information which the Court in <u>Webcraft</u> determined warranted protection.

The provisions of the Contract are very narrow in terms of the restraint placed upon Padovani. Under the Contract he is free to work in competition with Creed, with the only limitation being that he can not contact or solicit Creed customers or prospective customers <u>that he was in contact with during the two years prior to his leaving Creed.</u> Creed has learned that Padovani has approached Creed's customers, including Filingeri Electric and Allbright Electric and has heard through various sources that Padovani is calling on or attempting to call on other such customers, including, RLJ Electric and Spirelli Electric. It is believed that there are still others with whom he is in contact at to whom Creed has not yet heard such reports.

<u>Conclusion</u>

Weighing the equities, the balance clearly favors Creed. The restrictions sought to be imposed are minimally intrusive and will not prevent Padovani from earning a living. They will, however, prevent him from capitalizing on the propriety information he has about Creed's customers. Under the circumstances, the failure to grant this relief will surely cause Creed irreparable harm.

For all of the foregoing reasons, it is respectfully submitted that the motion of plaintiff for a temporary restraining order and preliminary injunctive relief be granted in all respects and that Padovani be enjoined from competing with Creed in violation of the provisions of his Contract.

Respectfully submitted,

The Law Offices of Gerry E. Feinberg, P.C.

By: _____
    Gerry E. Feinberg (4813)
    11 Martine Avenue
    White Plains, New York 10606
    (914) 946-4343

memo of law 5-15-07

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------

CREED ELECTRICAL SUPPLY &                  CIV.  ACTION No. 07-CV-2854
EQUIPMENT CORP.,                           (WP4) (MDF)

           Plaintiff

v.                                         AFFIDAVIT OF SERVICE

RON PADOVANI,  U.S.ELECTRICAL
SERVICES, LLC and MONARCH
ELECTRIC CO.,
           Defendants.

-----------------------------------------------------

STATE OF NEW YORK     )
                   ) ss.:
COUNTY OF WESTCHESTER )

      I, the undersigned, being sworn, say:  I am not a party to the action, am over 18 years of age and reside at Westchester County, New York.

      On May 17, 2007, I served by mail our memorandum of law upon the attorneys for the Defendants,  Genova, Burns  & Vernoia,  Eisenhower Plaza II, 354 Eisenhower Parkway, Livingston, NJ 07039-1023

_____
Matt Feinberg

Sworn before me this  / day
of May  2007

_____
Notary Public

GERRY E. FEINBERG
NOTARY PUBLIC  :N[...] New York
No. [...]
Qualified [...]
Commission Expires [...]